**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| HANOCO CHEMICALS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-13-3667 |
| | § | |
| SCOTT A. CLEVELAND, MARINE TANK | § | |
| TERMINAL, INC., AND DWAYNE CLEVELAND, | § | |
| *Defendants*. | § | |

## SUMMARY JUDGMENT ORDER

This loan payment dispute is before the court on plaintiff's motion for partial summary

judgment (Dkt. 14).[1] Having considered the parties' submissions and the law, the motion is

denied.

## I.     Background

Plaintiff Hanoco Chemicals, LLC alleges that defendant Scott Cleveland defaulted on

the repayment of loans it made to him. The following facts are undisputed for purposes of

the current motion. On April 24, 2009, at the request of Cleveland, Stryker Emmerton wired

$350,000 from his company, Hanoco Chemicals, LLC, to the account of Marine Tank

Terminal, Inc. Cleveland sent checks for $150,000 and $200,000 with instructions to deposit

---

[1]     All claims against Marine Tank Terminal, Inc. have been sent to arbitration, (Dkt. 20), and
are not part of this motion for summary judgment.

the first in 10 days and the second in 30 days.[2] The checks bounced. Cleveland sent a check

for $200,000 in August 2009 in partial payment of the loan.

In November 2009, Cleveland represented to Emmerton that he thought he could

repay most of the remaining $150,000 within a week. That did not happen. On January 27,

2010, even though the $150,000 balance remained unpaid, Emmerton wired an additional

$100,000 to the MTT account.[3] Cleveland subsequently repaid Hanoco $24,000 out of an

escrow account established for another purpose.

Hanoco alleges that Cleveland still owes it $226,000, plus interest and attorneys' fees.

Cleveland asserts that the loan was to MTT, not him personally, and in any event the debt

was satisfied when he paid Emmerton $200,000 in connection with the sale of Dunhill

Terminals, a business venture in Mobile, Alabama that Cleveland was involved in with

Emmerton. Cleveland also asserts that any claim related to the April 2009 loan is barred by

the statute of limitations.

## II.  **Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist,

and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

---

[2]     Cleveland's response says "MTT sent two checks," (Dkt. 18 at 3), but the checks necessarily
must have been sent by Cleveland or an individual acting at Cleveland's instruction. *See*
4/24/2009 instant messages (Dkt. 14-2 at 2-3). The record does not establish on what account
the two checks, or the August 2009 check, were drawn.

[3]     At that time, Emmerton stated that the outstanding balance on the April 2009 loan was
$186,000.  It is unclear what that figure includes, but it is immaterial for current purposes.

2

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

### III. Analysis

Texas law applies to this breach of contract claim. The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. – Fort Worth 2010, n.p.h.). The material terms of a loan contract are the (a) amount loaned; (b) the maturity date; (c) the interest rate; and (d) the repayment terms. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1993). Whether the parties reached an agreement is a question of fact; whether the agreement is legally enforceable is a question of law. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App. -- Houston [1st Dist] 2010, pet. denied).

Material fact questions prevent the court from determining as a matter of law that a valid loan agreement exists between Hanoco and Cleveland because the agreement is ambiguous. A contract is ambiguous when "the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). Whether a contract is ambiguous is a question of law the court must decide by looking at the contract as a whole in light of the surrounding circumstances. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). When a contract is ambiguous, interpretation of the contract becomes a fact question and summary judgment is improper. *Id.*

There are no formal loan documents signed by the parties. The entire $450,000

transaction was conducted by instant message and email, using the abbreviations and syntax

common to those platforms.[4] It is not surprising, then, that the "loan agreement" is

ambiguous. Hanoco contends that it is clear Cleveland solicited the loan on his own behalf

because of his consistent use of the pronoun "I." But it is also clear that he requested the loan

proceeds be deposited in MTT's account. A fact question exists as to whether Cleveland or

MTT was actually the recipient of the loan.

There is also a fact issue as to whether there was an accord and satisfaction by Hanoco

in accepting $200,000 from the Dunhill Terminal deal. Cleveland's January 25, 2010 email,

in which he asked for an additional $150,000, is some indication of his intent to wind up all

his outstanding debt to Emmerton ("I will be able to pay u your other monies as well") in

connection with the sale of the Dunhill Terminal. The fact that there is no written agreement

indicating that Hanoco accepted the payment from the sale of the terminal in full satisfaction

of the outstanding loan debt is not dispositive.[5] The defense of accord and satisfaction "rests

upon a new contract, *express or implied*, in which the parties agree to the discharge of the

---

[4]     *See, e.g.*, Dkt. 14-2 at 2-3 ("can u wire me 350k today i will fedex a check to u for 150k u can deposit in ten day and the other 200k in 30 days"); Dkt. 14-4 ("how is you cash position within MTT . . . . like to get settled on the $150,000. When?").

[5]     Hanoco's argument that it is unlikely anyone would enter an agreement to forgive $226,000 debt without memorializing it in writing is a bit disingenuous given that Hanoco wired $350,000 with no questions asked based only on an instant message. Dkt. 14-2 at 2 ("I won't ask anything . . .).

existing obligation by means of the lesser payment tendered and accepted." *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969) (emphasis added).

Cleveland did not file a cross-motion for summary judgment on his affirmative defense of the statute of limitations. Given the court's ruling on Hanoco's motion, it is not necessary to address the issue here. However, application of the statute of limitations hinges on a question of law, *i.e.*, whether Cleveland (for himself or on behalf of MTT) sufficiently acknowledged the debt as to create a new obligation to pay.[6] *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 604-05 (Tex. App. -- San Antonio 2005, no pet.). Therefore, it may be appropriate for determination upon further motion prior to submission of any issue to a jury.

## IV.    Conclusion and Order

Plaintiff's motion for partial summary judgment is denied. Hanoco's claims against Scott Cleveland remain set for trial on April 6, 2015.

Signed at Houston, Texas on December 15, 2014.

Stephen Wm Smith
United States Magistrate Judge

---

[6]    Texas law allows for a new promise to pay an old debt that will defeat the statute of limitations if it (1) is in writing signed by the party to be charged; (2) contains an unequivocal acknowledgment of the justness or existence of the particular obligation; and (3) refers to the obligation and expresses a willingness to honor it. *Id.*; TEX. CIV. PRAC. & REM. CODE § 16.065.